## Mary McPartland vs. Boston, Revere Beach and Lynn Railroad Company.

Essex.   March 13, 1922. — July 5, 1922.

Present: Rugg, C.J., Braley, De Courcy, Crosby, Carroll, & Jenney, JJ.

*Railroad*, Passenger.   *Passenger*.   *Negligence*, Of railroad.   *Practice, Civil*, Judge's charge.

At the trial of an action of tort by a woman against a railroad corporation for personal injuries alleged to have been received by the plaintiff because of negligence of the servants and agents of the defendant in starting a train as the plaintiff was in the act of boarding it, there was evidence tending to show that the plaintiff came to a certain station for the purpose of taking a train, which she called "the 9:05 P.M. train," for Lynn, a station between that station and Boston; that she had a ticket for transportation; that there was a train scheduled to stop at that station at 9:07 P.M. but that the time-table posted in the station for the use of passengers, while indicating when trains started from Boston, did not give the times of arrival or departure of trains from that station for Lynn; that the train which the plaintiff attempted to take left Boston at 8:15 P.M., and was scheduled to pass by the plaintiff's station without stopping; that that train was late and did not approach that station until 9:05 P.M.; that, because of a cautionary signal, it was proceeding slowly, and, when a block signal gave warning of danger, the fireman shut off the power; that the train stopped directly opposite the station, and that the plaintiff, after it had come to a standstill, had both feet upon the lowest step and was in the act of placing one foot upon the second step when the train started with a jerk and threw her to the ground; that a brakeman who was inside a car farther back, looking out of a window, saw her fall, pulled the bell cord, thus causing an emergency stop, and went to her assistance; that the conductor was in the forward car engaged in counting tickets, and that he and the other trainmen did not see the accident. *Held*, that

(1) It could have been found that the employees in charge of the stopping and starting of the train knew, or by the exercise of reasonable care might have known, that it had stopped at a station at a time when a train was due to stop there for passengers and that its sudden starting might cause injury to any one attempting to board it;

(2) Findings were warranted that the plaintiff was a passenger and that there was negligence in starting the train without giving her an opportunity to reach a place of safety;

(3) A verdict could not rightly have been ordered for the defendant.

At the trial of the action above described, the judge, subject to an exception by the defendant, charged the jury in part as follows: "If it [the train] came to a stop at the station, although not scheduled to stop there, upon the time of a train which was scheduled to stop there, and which the plaintiff had gone there for the purpose of taking, and she had bought her ticket, and therefore the company was under obligation to take her upon a particular train, I instruct you that

there was an implied invitation extended by the railroad company for her to take that train. She is not held to know the intricacies of the railroad time-table. She has a right to assume, in the absence of any notice to the contrary by any of the servants of the road, that a train stopping at a station at a time when a train is due to stop there is the proper train to board." *Held,* that the instruction was prejudicial error, in that it in substance ruled as a matter of law that the circumstances stated constituted an implied invitation to the plaintiff to take the train, whereas the existence of such invitation was a question of fact for the jury.

TORT for personal injuries received by the plaintiff as she was boarding a train of the defendant and alleged to have been caused by negligence of its servants and agents in starting the train before she had reached a place of safety therein. Writ dated March 18, 1919.

In the Superior Court, the action was tried before *N. P. Brown,* J. Material evidence and exceptions saved by the defendant are described in the opinion. The jury found for the plaintiff in the sum of $486.70; and the defendant alleged exceptions.

The case was submitted on briefs at the sitting of the court in March, 1922, and afterwards was submitted on briefs to all the justices except *Pierce,* J.

*S. Parsons, A. G. Wadleigh & P. F. Crowley,* for the defendant.
*J. W. Sullivan & J. F. Doyle,* for the plaintiff.

JENNEY, J. This is an action of tort in which the plaintiff, Mary McPartland, seeks to recover for personal injuries received by her while getting upon a passenger car of the defendant railroad at its Point of Pines station on August 24, 1918.

The evidence warranted the jury in finding that the plaintiff came to the station for the purpose of taking a train for Lynn, which she called the 9:05 P.M. train. She was accustomed to take this train. In the judge's charge, it is stated that she had a ticket for transportation. There was a train scheduled to stop at 9:07 P.M.; but the time-table posted in the station for the use of passengers, while indicating when trains started from Boston, did not give the times of arrival or departure of trains from Point of Pines for Lynn.

The passenger train which the plaintiff attempted to take left Boston at 8:15 P.M., and was scheduled to pass by Point of Pines without stopping. It was late and did not approach that station until 9:05. Because of a cautionary signal, it was proceeding

slowly, and, when a block signal gave warning of danger, the fireman shut off the power. On the conflicting evidence, it could have been found that the train stopped directly opposite the station, and that the plaintiff, after it had come to a standstill, had both feet upon the lowest step and was in the act of placing one foot upon the second step when the train started with a jerk and threw her to the ground. A brakeman who was inside a car farther back, looking out of a window, saw her fall, pulled the bell cord thus causing an emergency stop, and went to her assistance. The conductor was in the forward car engaged in counting tickets. He and the other trainmen did not see the accident, and none of them knew of it except the brakeman and one other who saw the plaintiff after its occurrence.

The evidence introduced in behalf of the defendant that the train whose sudden starting could have been found to have caused the accident was not scheduled to stop at Point of Pines and that the trainmen were in the places already stated, was not contradicted, and the parties have argued upon the assumption of its truth.

The case is here upon the defendant's exception to the denial of its motion for a directed verdict in its favor, and the refusal of three requests for instructions, all of which are within the scope of its motion, and upon an exception to a part of the charge. The defendant does not question that the due care of the plaintiff was properly submitted to the jury. Its contentions in support of the exceptions are threefold: (1) that the plaintiff was not entitled to the protection of a passenger, (2) that there was no evidence of negligence on the part of its employees, and (3) that there was reversible error in the instructions given.

That which is required in order to entitle one to the rights of a passenger is carefully stated in *Webster* v. *Fitchburg Railroad,* 161 Mass. 298. Usually there is no express contract made as the result of a formal presentation and an acceptance by formal words of a person for transportation. The existence of the relation commonly is implied from the circumstances. It must appear that the railroad company has held itself out as ready to receive the person who has presented himself as a passenger, and that the presentation was in acceptance of the offer, at a proper time and in a proper place and manner. See also *Hunt* v. *New York, New Haven &*

*Hartford Railroad,* 212 Mass. 102, 105. "It is true that the carrier ought to consent where there is no reasonable objection. Still it does not necessarily follow that it has consented or will consent in any given case." *Hogner* v. *Boston Elevated Railway,* 198 Mass. 260, 270. But facts may appear which will authorize a finding that it has so held itself out as to warrant a person in offering himself for carriage, and in acting on the assumption that his offer has been accepted, even where the carrier did not in fact intend to receive passengers.

In the case now considered, the jury could have found as follows: The plaintiff presented herself at a station of the defendant at a time· when a train was due there for the receipt of passengers for the station of her destination; she saw a train stop at the proper place substantially at the time of that which she had expected to take; she could reasonably act upon the supposition that it was the train which was scheduled to stop; and no warning was given that the train had not stopped to receive passengers. The plaintiff promptly started to board the train, which suddenly started without signal and without giving her an opportunity of reaching a place of safety. The employees in charge of the stopping and starting of the train knew, or by the exercise of reasonable care might have known, that it had stopped at a station at a time when a train was due to stop there for passengers, and that its sudden starting might cause injury to any one attempting to board it. If the facts were as stated, in the opinion of a majority of the court a verdict could not properly have been ordered for the defendant as they justified findings that the plaintiff was a passenger and that there was negligence in starting without giving her an opportunity to reach a place of safety. This case is not governed by *Jones* v. *Boston & Maine Railroad,* 163 Mass. 245, which is plainly distinguishable. In that case the plaintiff was hurt while attempting to get on a train which had stopped to deliver passengers, and those who were ready to take it were permitted to do so. It was dark; the plaintiff was not at the station when the train stopped; he saw no trainmen and was seen by none of them. The jury found that the conductor in the exercise of due care had given the signal to start before the plaintiff attempted to get on the train; it actually started just as he stepped upon the platform, and there was no negligence on the part of the other trainmen.

Under these facts it was held that the plaintiff did not have the rights of a passenger.

The third contention of the defendant relates to a part of the charge to the jury which was as follows: "If it [the train] came to a stop at the station, although not scheduled to stop there, upon the time of a train which was scheduled to stop there and which the plaintiff had gone there for the purpose of taking, and she had bought her ticket, and therefore the company was under obligation to take her upon a particular train, I instruct you that there was an implied invitation extended by the railroad company for her to take that train. She is not held to know the intricacies of the railroad time-table. She has a right to assume, in the absence of any notice to the contrary by any of the servants of the road, that a train stopping at a station at a time when a train is due to stop there is the proper train to board."

We think that this instruction was erroneous. It could not properly be ruled as matter of law that the circumstances stated constituted an implied invitation to the plaintiff to take the train. That question was one of fact for the jury under proper instructions. It follows that the exceptions must be sustained.

*So ordered.*